# EXHIBIT "G"

 Jonathan Sack <jsack1@gmail.com>

**Freeman & Co. adv. Tony Seto**

**Jonathan Sack** <jsack1@gmail.com>  Mon, Mar 19, 2018 at 5:01 PM
Reply-To: jsack@sackandsack.com
To: tseto@berkcap.com, Tony.seto@yahoo.com

Please see the attached letter.

Jonathan Sack, Esq.
Sack & Sack
70 East 55th Street, 10th Floor
New York, NY 10022
Tel:  212-702-9000
Direct: 212-224-0660
Fax: 212-702-9702
Cell: 917-754-9000
Email:  jsack@sackandsack.com

**Scanned from a Xerox Multifunction Printer.pdf**
98K

# SACK & SACK, LLP

ATTORNEYS-AT-LAW
70 EAST 55TH STREET, 10TH FLOOR
NEW YORK, NEW YORK 10022
PHONE: (212) 702-9000 • FAX: (212) 702-9702

**Jonathan Sack**
e-mail: JSack@SackandSack.com

March 19, 2018

**BY EMAIL**

Tony Seto
45 Park Avenue
Apt. 2003
New York, NY 10016
Tony.seto@yahoo.com

      Re:  **Freeman & Co. and Tony Seto**

Dear Mr. Seto:

  We represent Freeman & Company ("*Freeman*" or "*the Firm*"). Freeman has recently received information, which clearly demonstrates that you have engaged in faithless activities in derogation of your contractual and common-law fiduciary duties to the Firm.

  Your breaches are magnified because of your position as a Partner at Freeman. At the outset, we have found the following:

  1.  **Self-Dealing and Misappropriation of Corporate Opportunities** – Upon your sudden, surreptitious and premeditated plan to resign on March 9, 2018, my client found a spreadsheet you left behind at your desk, dated February 1, 2018, six (6) weeks before your resignation. On it, you indicated that you had an engagement letter agreed to with Freeman's client (code name "VI") which you indicate has a probability of engaging at 100% and an estimated fee of $2,250,000. You indicated to your fellow Freeman partners that this transaction was dead and was not going to proceed. Furthermore, your spreadsheet states, ***"Engagement Letter has been agreed to and prospect awaiting me to land a new platform."*** We have reason to believe you've taken this transaction and client relationship with you to your new firm, Berkshire Capital, in derogation of your common law fiduciary duties as a Partner of Freeman, and and your express contractual Employment and Partner Agreements, which specifically state:

> **Non-Competition.** A Member shall not, while it is a Member of the Company and for ninety (90) days after its membership is terminated for any reason, directly or indirectly, in any form or manner, participate in activities which are competitive with the business of the Company, or have a monetary interest in or invest capital in any business or enterprise in any field in competition with the Company, wherever located, whether

>such interest be by way of (i) ownership, (ii) stock interest, (iii) financing or (iv) lending arrangements or in any other form or of any other nature. Upon being admitted as a Member and during the term of such Member's membership with the Company, Members shall disclose to the Company any stock owned, or other interest held, by the Member and the Member's affiliates or members of the Member's family, as applicable, in any business (regardless of the form thereof) competitive with the Company. Notwithstanding the foregoing, no Member shall be prohibited from investing in any competitive business, as aforesaid, the capital stock of which is publicly traded so long as the Member's and the Member's affiliates' or the Member's family's ownership, as applicable, collectively does not represent more than ten percent of all outstanding shares of capital stock of such business and is for investment purposes only. A Member shall disclose the obligations created by this Section 13.3 to any subsequent employer.
>
>**Non-Solicitation**. A Member shall not, while it is a Member of the Company and for six (6) months after its membership is terminated for any reason:
>
>(ii) directly or indirectly, attempt to influence, persuade or induce any client of the Company to (A) terminate its contract with the Company, (B) refrain from entering into a new contract with the Company or (C) enter into any contract with any competitor of the Company.

Furthermore, we understand that despite your representations to the contrary, you have another transaction with a 100% probability of engaging, with an estimated fee of $2.5 million (code name "CN"). Your spreadsheet indicates, *"Board and CEO has asked for engagement letter."* Additionally, your spreadsheet lists four other firms as *"would like to engage,"* that you were soliciting while employed by Freeman.

What's most remarkable about your serial efforts to use Freeman's assets, resources, personnel, and good will for your own benefit is the utter audacity you evinced by sitting in Monday morning meetings in front of all employees and monthly Partner Meetings with fellow partners, while you became intimately aware of the Firm's entirety of its pipeline and the status of its deal flow. This inevitable disclosure necessitates our demand that you cease, desist, and refrain from engaging in any competitive activity for 90 days from today, the date you have now

become aware of the information which Freeman deems so sensitive and critical to its business.

2. **Faithless Servant** – Our review of electronic communications reveals that you have engaged in faithless behavior for your own benefit and to the Firm's detriment. We intend to recover from you all compensation paid to you during the period of time which you were disloyal. This includes, at least, Partnership distributions and the $230,000 bonus paid to you in December 2017.

3. **Tortious/Intentional Interference** – We believe that you are acting in concert with your new employer, Berkshire. We intend to pursue all remedies available, including enjoining you from working at Berkshire given your inevitable disclosure to them of the confidential and highly sensitive information you learned solely as a consequence of your employment and Partnership with Freeman. You will be restrained from performing services for any other employer pursuant to the terms of your various Agreements, copies of which are attached. Furthermore, you will be restrained from soliciting any and all Freeman clients or potential clients given your breaches of your contractual and fiduciary duties of loyalty to Freeman and your former fellow Partners.

While you were previously reminded of your reasonable post-employment restrictions and obligations under the relevant agreements and Freeman policies, on that date you provided notice of your resignation, you have nonetheless put your own interests ahead of those of the Firm, who earnestly paid you well despite zero revenue generation in all of 2017.

We demand that you submit for imaging all of your electronic devices and provide passwords for all of your cloud-based and electronic storage along with your personal email account.

Additionally, you must immediately take steps to preserve the integrity of all data on any electronic device, which devices may (and likely do) contain electronically stored information and are important and irreplaceable sources of relevant evidence concerning your conduct.

By this letter, you are now on formal notice not to destroy, delete, overwrite, or otherwise cause the destruction or loss of any of the information on these devices, including, but not limited to, email and other electronic communications, all attachments thereto, text messages, voicemail messages, calendars, telephone logs, Internet usage files, spreadsheets, tables, messages to and from your LinkedIn account and any other social media accounts, and network access information concerning communications or documents created, stored, and/or utilized by you. All such material should be preserved, regardless of your normal document retention

policies or practices.

                                     Very truly yours,

                                     */s/ Jonathan Sack*

                                     Jonathan Sack



Jonathan Sack <jsack1@gmail.com>

## Freeman & Co. adv. Tony Seto

**Jonathan Sack** <jsack1@gmail.com>  Mon, Mar 19, 2018 at 5:06 PM
Reply-To: jsack@sackandsack.com
To: bcameron@berkcap.com

Dear Mr. Cameron:

I represent Freeman & Co.

You have recently hired Tony Seto, in derogation of his post-employment obligations to Freeman & Co.

Moreover, you will need to quarantine your firm's computer systems, because we have very good reason to believe that Mr. Seto polluted your information systems with highly confidential and proprietary information he secreted from Freeman & Co.

I expect that your counsel immediately call me prior to our filing for a TRO.

Jonathan Sack, Esq.
Sack & Sack
70 East 55th Street, 10th Floor
New York, NY 10022
Tel:  212-702-9000
Direct: 212-224-0660
Fax: 212-702-9702
Cell: 917-754-9000
Email: jsack@sackandsack.com

[Quoted text hidden]

📄 **Scanned from a Xerox Multifunction Printer.pdf**
98K

# SACK & SACK, LLP

ATTORNEYS-AT-LAW
70 EAST 55TH STREET, 10TH FLOOR
NEW YORK, NEW YORK 10022
PHONE: (212) 702-9000 • FAX: (212) 702-9702

**Jonathan Sack**
e-mail: JSack@SackandSack.com

March 19, 2018

**BY EMAIL**

Tony Seto
45 Park Avenue
Apt. 2003
New York, NY 10016
Tony.seto@yahoo.com

Re: <u>**Freeman & Co. and Tony Seto**</u>

Dear Mr. Seto:

We represent Freeman & Company ("*Freeman*" or "*the Firm*"). Freeman has recently received information, which clearly demonstrates that you have engaged in faithless activities in derogation of your contractual and common-law fiduciary duties to the Firm.

Your breaches are magnified because of your position as a Partner at Freeman. At the outset, we have found the following:

1. **Self-Dealing and Misappropriation of Corporate Opportunities** – Upon your sudden, surreptitious and premeditated plan to resign on March 9, 2018, my client found a spreadsheet you left behind at your desk, dated February 1, 2018, six (6) weeks before your resignation. On it, you indicated that you had an engagement letter agreed to with Freeman's client (code name "VI") which you indicate has a probability of engaging at 100% and an estimated fee of $2,250,000. You indicated to your fellow Freeman partners that this transaction was dead and was not going to proceed. Furthermore, your spreadsheet states, *"**Engagement Letter has been agreed to and prospect awaiting me to land a new platform.**"* We have reason to believe you've taken this transaction and client relationship with you to your new firm, Berkshire Capital, in derogation of your common law fiduciary duties as a Partner of Freeman, and and your express contractual Employment and Partner Agreements, which specifically state:

> **Non-Competition.** A Member shall not, while it is a Member of the Company and for ninety (90) days after its membership is terminated for any reason, directly or indirectly, in any form or manner, participate in activities which are competitive with the business of the Company, or have a monetary interest in or invest capital in any business or enterprise in any field in competition with the Company, wherever located, whether

> such interest be by way of (i) ownership, (ii) stock interest, (iii) financing or (iv) lending arrangements or in any other form or of any other nature. Upon being admitted as a Member and during the term of such Member's membership with the Company, Members shall disclose to the Company any stock owned, or other interest held, by the Member and the Member's affiliates or members of the Member's family, as applicable, in any business (regardless of the form thereof) competitive with the Company. Notwithstanding the foregoing, no Member shall be prohibited from investing in any competitive business, as aforesaid, the capital stock of which is publicly traded so long as the Member's and the Member's affiliates' or the Member's family's ownership, as applicable, collectively does not represent more than ten percent of all outstanding shares of capital stock of such business and is for investment purposes only. A Member shall disclose the obligations created by this Section 13.3 to any subsequent employer.
>
> **Non-Solicitation**. A Member shall not, while it is a Member of the Company and for six (6) months after its membership is terminated for any reason:
>
> (ii) directly or indirectly, attempt to influence, persuade or induce any client of the Company to (A) terminate its contract with the Company, (B) refrain from entering into a new contract with the Company or (C) enter into any contract with any competitor of the Company.

Furthermore, we understand that despite your representations to the contrary, you have another transaction with a 100% probability of engaging, with an estimated fee of $2.5 million (code name "CN"). Your spreadsheet indicates, *"Board and CEO has asked for engagement letter."* Additionally, your spreadsheet lists four other firms as *"would like to engage,"* that you were soliciting while employed by Freeman.

What's most remarkable about your serial efforts to use Freeman's assets, resources, personnel, and good will for your own benefit is the utter audacity you evinced by sitting in Monday morning meetings in front of all employees and monthly Partner Meetings with fellow partners, while you became intimately aware of the Firm's entirety of its pipeline and the status of its deal flow. This inevitable disclosure necessitates our demand that you cease, desist, and refrain from engaging in any competitive activity for 90 days from today, the date you have now

become aware of the information which Freeman deems so sensitive and critical to its business.

2. **Faithless Servant** – Our review of electronic communications reveals that you have engaged in faithless behavior for your own benefit and to the Firm's detriment. We intend to recover from you all compensation paid to you during the period of time which you were disloyal. This includes, at least, Partnership distributions and the $230,000 bonus paid to you in December 2017.

3. **Tortious/Intentional Interference** – We believe that you are acting in concert with your new employer, Berkshire. We intend to pursue all remedies available, including enjoining you from working at Berkshire given your inevitable disclosure to them of the confidential and highly sensitive information you learned solely as a consequence of your employment and Partnership with Freeman. You will be restrained from performing services for any other employer pursuant to the terms of your various Agreements, copies of which are attached. Furthermore, you will be restrained from soliciting any and all Freeman clients or potential clients given your breaches of your contractual and fiduciary duties of loyalty to Freeman and your former fellow Partners.

While you were previously reminded of your reasonable post-employment restrictions and obligations under the relevant agreements and Freeman policies, on that date you provided notice of your resignation, you have nonetheless put your own interests ahead of those of the Firm, who earnestly paid you well despite zero revenue generation in all of 2017.

We demand that you submit for imaging all of your electronic devices and provide passwords for all of your cloud-based and electronic storage along with your personal email account.

Additionally, you must immediately take steps to preserve the integrity of all data on any electronic device, which devices may (and likely do) contain electronically stored information and are important and irreplaceable sources of relevant evidence concerning your conduct.

By this letter, you are now on formal notice not to destroy, delete, overwrite, or otherwise cause the destruction or loss of any of the information on these devices, including, but not limited to, email and other electronic communications, all attachments thereto, text messages, voicemail messages, calendars, telephone logs, Internet usage files, spreadsheets, tables, messages to and from your LinkedIn account and any other social media accounts, and network access information concerning communications or documents created, stored, and/or utilized by you. All such material should be preserved, regardless of your normal document retention

policies or practices.

                Very truly yours,

                */s/ Jonathan Sack*

                Jonathan Sack