Victor C. Bushell (VB 3930)
Cem Ozer (CO 1718)
BUSHELL, SOVAK, OZER & KANE LLP
274 Madison Avenue, Suite 901
New York, New York 10016
Tel: 212–949–4700
vbushell@bushellsovak.com
cozer@bushellsovak.com
*Attorneys for Defendant*
*Berkshire Capital Securities LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

FREEMAN & CO., LLC and FREEMAN
CAPITAL HOLDINGS, LLC,

                Plaintiffs,

    -against-

TONY SETO, and BERKSHIRE CAPITAL
SECURITIES, LLC,

                Defendants.

------------------------------------------------------------------- X

Case No. 18-cv-03180 (JFK)

Hon. John F. Keenan

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT BERKSHIRE CAPITAL SECURITIES LLC'S
# MOTION TO DISMISS AND COMPEL ARBITRATION

BUSHELL, SOVAK, OZER & KANE LLP
274 Madison Avenue, Suite 901
New York, New York 10016
212-949-4700
*Attorneys for Defendant*
*Berkshire Capital Securities LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 3

    1. The Freeman Entities ................................................................................... 3

    2. Tony Seto ..................................................................................................... 4

    3. Berkshire ...................................................................................................... 4

    4. Plaintiffs' allegations against Seto and Berkshire ....................................... 4

STATEMENT OF THE FACTS ..................................................................................... 8

ARGUMENT .................................................................................................................. 6

    I.    PLAINTIFFS MUST ARBITRATE THEIR CLAIMS BEFORE FINRA. . 6

        A.  Arbitration Agreements are Favored under Federal Law ........................... 6

        B.  FINRA Rules Require Arbitration of the Instant Dispute ........................... 9

        A.  Plaintiffs are Required to Arbitrate the Instant Dispute Pursuant to the Code ......................................................................................................... 11

            1. Plaintiffs are estopped from avoiding arbitration ..................................... 11

            2. Plaintiffs must arbitrate under agency principles ..................................... 13

    II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AS ALL OF PLAINTIFFS' CLAIMS MUST BE ARBITRATED ...................................................... 14

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,*
170 F.3d 349 (1999) ................................................................................................ 11, 13

*Christensen v. Nauman,*
73 F.Supp.3d 405 (S.D.N.Y. 2014) ................................................................................ 9

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) .................................................................................................. 7, 8

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
9 F.3d 1060 (2d Cir. 1993) ........................................................................................... 12

*Fils-Aime v. Rynder TRS, Inc.,*
40 A.D.3d 917 (2d Dep't 2007) .................................................................................... 13

*Fleck v E.F. Hutton Group, Inc.,*
891 F.2d 1047 (2d Cir. 1989) ......................................................................................... 9

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991) ......................................................................................................... 7

*Goldberg v. Sovereign Bancorp, Inc.,*
10 Civ. 6263(DAB), 2011 WL 13261837 (S.D.N.Y. Aug. 19, 2011) ...................... 14

*Hart v. Canadian Imperial Bank of Commerce*,
43 F.Supp.2d 395 (S.D.N.Y. 1999) ................................................................................. 7

*Invista S.A.R.L. v. Rhodia, S.A.,*
625 F.3d 75 (3d Cir. 2010) ............................................................................................ 12

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,*
863 F.2d 315 (4th Cir. 1988) ......................................................................................... 13

*Letizia v. Prudential Bache Secs., Inc.,*
802 F.2d 1185 (9th Cir. 1986) ....................................................................................... 13

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ............................................................................... 14

*Malik v. Meissner*,
82 F.3d 560 (2d Cir. 1996) ................................................................................. 14

*Marcus v. Masucci*,
118 F.Supp.2d 453 (S.D.N.Y. 2000) ............................................................... 7, 15

*Maurillo v. Park Slope U-Haul*,
194 A.D.2d 142 (2d Dep't 1993) ........................................................................ 13

*McAllister Bros., Inc. v. A & S Transp. Co.*,
621 F.2d 519 (2d Cir. 1980) ............................................................................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................ 7, 8

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
7 F.3d 1110 (3d Cir. 1993) ................................................................................. 13

*Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
85 N.Y.2d 173 (1995) .......................................................................................... 8

*Singer v. Jefferies & Co.*,
78 N.Y.2d 76 (1991) ............................................................................................ 9

*Sinnett v. Friendly Ice Cream Corp.*,
319 F.Supp.2d 439 (S.D.N.Y. 2004) .................................................................. 14

*Thompson-CSF, S.A. v. American Arbitration Ass'n*,
64 F.3d 773 (2d Cir. 1995) ................................................................................. 11

*Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ............................................................................................. 7

**Rules, Statutes and Other Authorities**

9 U.S.C. § 1 *et seq.* ........................................................................................................... 6
9 U.S.C. § 3 ................................................................................................................... 1, 7
9 U.S.C. § 4 ................................................................................................................... 1, 8
15 U.S.C. § 78c(a)(4)(A) ............................................................................................ 11, 12
15 U.S.C. § 78c(a)(5)(A) ............................................................................................ 11, 12
15 U.S.C. § 78o(b) ..................................................................................................... 11, 12
Fed. R. Civ. P. Rule 12(b)(1) ...................................................................................... 1, 14

**PRELIMINARY STATEMENT**

Defendant Berkshire Capital Securities LLC ("Berkshire") respectfully moves to dismiss the instant action and compel the parties to arbitrate before the Financial Industry Regulatory Authority, Inc. ("FINRA"), pursuant to 9 U.S.C. §§ 3 and 4 and Federal Rule of Civil Procedure Rule 12(b)(1).

Plaintiffs Freeman Capital Holdings, LLC ("FCH") and Freeman & Co., LLC's ("Freeman & Co.") Complaint alleges a number of claims against Defendants Tony Seto and Berkshire, all arising from Mr. Seto's partnership and employment with the Plaintiffs, which Plaintiffs collectively refer to as "Freeman".[1] What Plaintiffs fail to disclose to the Court, however, is that both FCH and Freeman & Co., are respectively grandparent and parent entities to Freeman & Co. Securities LLC ("Freeman Securities"), a broker-dealer registered with the Securities and Exchange Commission and a member of FINRA. Freeman Securities conducts business in the highly regulated securities industry and was in fact Mr. Seto's real employer. Freeman & Co.'s website, at www.freeman-co.com, credits Freeman Securities as the entity involved in **_all_** of Freeman & Co.'s transactions, including broker-dealer, asset management, insurance, financial technology (Mr. Seto's alleged specialty), specialty finance and assets, and private equity matters. Indeed, Exhibit D to the Complaint identified Freeman Securities -- not Plaintiffs -- as seeking to become the financial advisor to Client VI, the client Plaintiffs accuse Mr. Seto of trying to divert to Berkshire. That this is so is no surprise because for an entity to conduct the business that Mr. Seto was allegedly involved in, it must be a registered broker-dealer. ***The requirement of FINRA membership is obviously so central to Plaintiffs' business***

---

[1] The Complaint uses "Freeman" to mean both FCH and Freeman & Co. and generally conflates these two separate legal entities.

1

*that the Freeman website improperly lists Freeman & Co. as a member of FINRA, even though it is not.*

Furthermore, FINRA's Broker Check database lists Freeman Securities as Mr. Seto's employer for the period beginning January 2017 and ending March 2018, the identical dates Mr. Seto's employment with Freeman is alleged in the Complaint. It is incontrovertible that Freeman Securities filed the Form U-4 registering Mr. Seto as a licensed broker with FINRA when he began his employment with Freeman Securities in January 2017 and subsequently filed the Form U-5 with FINRA when Mr. Seto resigned in March 2018. Similarly, Berkshire, which is also a FINRA member, filed a Form U-4 registering Mr. Seto with FINRA on April 9, 2018 and then filed a Form U-5 when Berkshire and Mr. Seto mutually agreed to terminate his employment in April 24, 2018.

The Form U-4s Mr. Seto executed and filed with FINRA for both Freeman Securities and Berkshire contain an express agreement to arbitrate any dispute that may arise between him and his employer in accordance with FINRA's Code of Arbitration Procedure.

As Freeman Securities and Berkshire are FINRA members and Seto is an associated member under FINRA's Code of Arbitration Procedure, and the claims alleged in the Complaint arise out of the business activities of members and an associated person, FINRA's Code of Arbitration Procedure mandates these claims be arbitrated before FINRA.

Undoubtedly, Plaintiffs intentionally avoided identifying and naming Freeman Securities as a plaintiff in this litigation for the obvious purpose of circumventing the arbitration requirement. But, Plaintiffs' ruse is in vain. The law in this Circuit is clear that non-signatories (such as Plaintiffs here) to an agreement to arbitrate can nevertheless be compelled to arbitrate under several different legal bases. Credible facts exist to compel arbitration of the claims raised

in this case under two legal theories: 1) equitable estoppel and 2) agency. For the reasons discussed below, Plaintiffs' status as non-FINRA members is no impediment to this Court granting Berkshire's motion to stay this action and compel arbitration.

## STATEMENT OF FACTS

### 1. The Freeman Entities

FCH is a Delaware limited liability company that holds the majority-in-interest of the membership interest in Freeman & Co. Declaration of Cem Ozer, dated July 9, 2018 (hereinafter "Ozer Decl.", Ex. 1 (attaching a true and accurate copy of Plaintiffs' Complaint, Ex. A, pg. 6 of 65).[2] FCH was formed for the purpose of holding the majority membership interest in Freeman & Co. *Id.*, pg. 12 of 65. Freeman & Co. is also a Delaware limited liability company engaged in the business of, among other things, providing advice and related advisory services, capital raising, underwriting to various financial institutions. Complaint at ¶ 5.

Freeman Securities is a Delaware limited liability company whose main office is at the same New York City address as Freeman & Co: 444 Madison Avenue 12th Floor, New York, NY 10022. The two also share the same telephone number. Ozer Decl., Ex. 3; Complaint, Ex. E. Freeman & Co. owns the majority-in-interest of Freeman Securities. Ozer Decl., Ex. 3.

Freeman Securities is a broker-dealer, registered with FINRA and the Securities Exchange Commission. *Id.* On January 26, 2017, Freeman Securities filed a FINRA Form U-4 (Uniform Application for Securities Industry Registration or Transfer) for Mr. Seto showing him as its employee. *Id.*, Ex. 5. The Complaint, however, simply alleges Mr. Seto was employed by "Freeman" until his resignation on March 9, 2018. Complaint at ¶ 7. After Mr. Seto's

---

[2] For the sake of convenience, all subsequent citations to the Complaint will simply refer to the "Complaint" and the appropriate paragraph therein or the attached exhibits to the Complaint.

resignation, Freeman Securities filed a FINRA Form U-5[3] (Uniform Termination Notice for Securities Industry Registration). Ozer Decl., Ex. 6. The U-5 filed by Freeman Securities alleges the identical claims against Mr. Seto that are contained in the Complaint. *Cf. id.* and Complaint. For all that, however, Freeman Securities is not a named plaintiff in this suit.

   2. **Tony Seto**

According to the Broker Check report for Tony Seto, from the FINRA database publicly available on its website, www.finra.org, Mr. Seto was employed by Freeman Securities for the period January 2017 to March 2018, and then began his employment with Berkshire. *Id.*, Ex. 2 (attaching a true and accurate copy of the Broker Check report for Tony Seto).

   3. **Berkshire**

Berkshire is a broker-dealer, which like Freeman Securities, is registered with FINRA and the Securities Exchange Commission. *Id.*, Ex. 4 (attaching a true and accurate copy of the Broker Check report for Berkshire).

   4. **Plaintiffs' allegations against Seto and Berkshire**

Plaintiffs allege that Mr. Seto was a partner and employee of Freeman from January 2017 to March 2018. Complaint at ¶¶ 7, 16, and 56. In that role, Mr. Seto had access to Freeman's confidential information and trade secrets. *Id.* at ¶ 7. On March 9, 2018, Mr. Seto resigned his position with Freeman and began employment with Berkshire on March 12, 2018. *Id.* at ¶¶ 56-57.

The Complaint alleges that prior to and after his resignation from Freeman, Mr. Seto:

> engaged in efforts to shop Freeman's clients, leads, and other confidential information to [Freeman's] direct competitors and to assist those competitors in

---
[3] FINRA Forms U-4 and U-5 are used by broker-dealers, such as Freeman Securities, to register, and terminate the registrations of associated persons with self-regulatory organizations (SROs), and the states in which they are licensed. Ozer Dec. at 10.

> soliciting and diverting [Freeman's] existing prospective business opportunities in order himself to the detriment of [Freeman].

*Id.* at ¶ 58.

In particular, the Complaint alleges that prior to his resignation from Freeman, Mr. Seto:

> had been working secretly to solicit away a particular client (and deal) known as client VI.

*Id.* at ¶ 62.

In support of this contention, Plaintiffs attached Ex. D to the Complaint purportedly showing communications between Mr. Seto and Client VI. However, contrary to Plaintiffs' contentions, Ex. D makes clear that the purported prospective agreement with Client VI (identified by the document as Virtual Incentives LLC) concerns **Freeman Securities** and is signed by Mr. Seto as executive director of Freeman Securities. Complaint, Ex. D, pgs. 4 of 15 to 11 of 15. Neither Freeman nor FCH are parties to this agreement. *See id.* Significantly, the Complaint does not allege whether Client VI or any other actual or prospective client of Plaintiffs, as a result of Mr. Seto's alleged action, is doing business with Berkshire.

The Complaint alleges that Mr. Seto's resignation from Freeman on March 9, 2018 and his commencing employment with Berkshire on March 12, 2018 violated the non-competition clause of FCH's operating agreement, which states that

> A Member shall not … for ninety (90) days after its membership is terminated for any reason, directly or indirectly, in any form or manner, participate in activities which are competitive with the business of [FCH], or have a monetary interest in or invest capital in any business or enterprise in any field in competition with [FCH].

*Id.* at ¶¶ 48 and 56-57.

Importantly, however, Berkshire does not compete with FCH. As the Complaint alleges, Berkshire is a boutique investment and advisory firm. *Id.* at ¶ 80 B. On the other hand, FCH

5

was formed for the sole purpose of holding the majority membership interest in Freeman & Co, which, in turn, holds the majority membership interest in Freeman Securities. *Id.*, Ex. A, pg. 12 of 65; Ozer Decl., Ex. 3.

The Complaint further alleges Mr. Seto took confidential, proprietary information and trade secrets from Freeman in violation of both FCH's operating agreement and the non-disclosure agreement he signed with Freeman & Co, *see id.* at ¶¶ 49-52 and Ex. A and B thereto, and that Mr. Seto took that information for use at his new employer, Berkshire. *Id.* at ¶ 83. In what is best characterized as total speculation by Plaintiffs, they also allege, upon information and belief, "Berkshire knew of Seto's contractual obligations to Freeman and assisted, aided and abetted Seto in his breaches of those agreements as well as his breach of his fiduciary duty to Freeman and its partners." *Id.* at ¶ 59.

On or about March 19, 2018, Plaintiffs' counsel wrote a letter to Mr. Seto's counsel, Kenneth Rubinstein, Esq. (who at no time represented Berkshire), outlining Mr. Seto's alleged violations. *Id.* at ¶ 81. By letter dated April 25, 2018, Berkshire's counsel notified Plaintiffs' counsel that Mr. Seto's employment was terminated and his access to Berkshire's servers and systems blocked. Ozer Decl., Ex. 9. Berkshire also denied any knowledge that Mr. Seto was subject to any restrictive covenants that could impact his employment with Berkshire when it hired him. *Id.*

## ARGUMENT

### I. PLAINTIFFS MUST ARBITRATE THEIR CLAIMS BEFORE FINRA

#### A. Arbitration Agreements are Favored under Federal Law

The FAA, 9 U.S.C. § 1 *et seq.*, requires that any case pending in court, in which the parties agreed in writing to arbitrate, must be stayed. The FAA requires courts to "rigorously

enforce" arbitration agreements and manifests a "liberal policy favoring arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Any doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25. The FAA governs all actions in state and federal court that arise out of arbitration agreements involving interstate commerce. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Plaintiffs expressly allege that their services "are offered across the country and throughout the world." Complaint at ¶¶ 86, 142.

It is well established that a signed Form U–4, such as those Mr. Seto executed, constitutes an express arbitration agreement enforceable under the FAA. *Marcus v. Masucci,* 118 F. Supp. 2d 453, 456 (S.D.N.Y. 2000); *Hart v. Canadian Imperial Bank of Commerce,* 43 F.Supp.2d 395, 399 (S.D.N.Y.1999) (citing to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 22-25(1991)).

Pursuant to the FAA, a court must stay any proceeding in which it is found that the parties agreed to arbitrate disputes pursuant to a written agreement. *See Moses H. Cone*, 460 U.S. at 24-25. Specifically, Section 3 of the FAA states:

> If any suit or proceeding brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such, arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Furthermore, the FAA mandates this Court to compel arbitration:

7

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . .

9 U.S.C. § 4.

Simply put, if the matter is subject to arbitration and one party seeks to arbitrate, the court must stay the court action pending completion of the arbitration, *Byrd*, *supra*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that the district court shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). In *Moses H. Cone*, the Supreme Court held:

> Congress's clear intent, in the [FAA, is] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible.... [The FAA calls] for an expeditious and summary hearing, with only restricted inquiry into factual issues ... the [district court's] stay thus frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements.

460 U.S. at 22-23, 103 S. Ct. 940-41 (footnotes omitted).

The FAA governs arbitration of employment disputes in the securities industry. *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 85 N.Y.2d 173, 180 (1995).

As discussed below, the parties are subject to a written arbitration agreement involving the employment of Mr. Seto, and this dispute falls squarely within the arbitration clause. Accordingly, the Court must stay this action and compel arbitration pursuant to the FAA.

## B. FINRA Rules Require Arbitration of the Instant Dispute

Courts agree the FINRA Code of Arbitration for Industry Disputes (the "Code") provides for mandatory arbitration of most employment disputes. *Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1053 (2d Cir. 1989) (arbitration is compulsory if the claim involves "significant aspects of the employment relationship"); *see also Singer v. Jefferies & Co.,* 78 N.Y.2d 76, 80-84 (1991) (compelling employee to arbitrate employment-related dispute).

In the U-4, which Mr. Seto executed with Freeman Securities and with Berkshire, and which must be signed by every registered representative in the securities industry, he agreed to the following:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-law of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Ozer Decl., Ex. 5.

Section 13200(a) of the Code states:

> Except as otherwise provided in the Code, a dispute ***must be arbitrated*** under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> 1. Members;
>
> 2. Members and Associated Persons; or
>
> 3. Associated Persons.

*Id.*, Ex. 11 (emphasis added); *Christensen v. Nauman,* 73 F. Supp. 3d 405, 410-11 (S.D.N.Y. 2014) (FINRA is a self-regulatory organization with authority to exercise comprehensive oversight over all securities firms that do business with public; membership in FINRA

9

constitutes agreement to adhere to FINRA rules and regulations, including its Code and relevant arbitration provisions contained therein).

Berkshire and Freeman Securities are both FINRA members. *Id.*, Exs. 3 and 4. Mr. Seto qualifies as an "associated person" as that term means "a person associated with a member, as that term is defined in paragraph (u)" of Code Sec. 13100(b) and paragraph (u) provides that a "person associated with a member" means, among other things, "a natural person who is registered or has applied for registration under the Rules of FINRA." *Id.,* Exs. 10. Mr. Seto was registered with FINRA while employed by Freeman Securities and then while employed by Berkshire. *Id.,* Exs. 2, 5, and 7. For purposes of the Code, a person formerly associated with a member is a person associated with a member. *Id.*

Notwithstanding that the named Plaintiffs are not FINRA members, the claims alleged in the Complaint do arise from the "business activities" of two FINRA "members" (Freeman Securities and Berkshire) and an "associated person" (Mr. Seto). The Complaint alleges Mr. Seto, while employed by Plaintiffs, breached his fiduciary duty to Plaintiffs, was a disloyal servant, misappropriated trade secrets/confidential information, misappropriated clients to take to Berkshire, and that Berkshire generally aided and abetted Mr. Seto's efforts. *See* Complaint. Plaintiffs used Freeman Securities as the entity through which to conduct business. *See* Ozer Decl., Ex. 12-13. As Freeman & Co.'s website, at www.freeman-co.com, clearly reveals, Freeman Securities is the entity involved in all of the transactions listed on that website. *Id.* Ex. D to the Complaint, which is a purported letter agreement presented to Client VI, whom Plaintiffs allege Mr. Seto sought to lure over to Berkshire, is yet another example of this point. Pursuant to Ex. D, it was Freeman Securities which would act as Client VI's financial advisor, not the named Plaintiffs. Moreover, the services Freeman Securities offered Client VI, involved

transactions for the sale or exchange of Client VI's equity securities, which require that Freeman Securities be registered with the Securities Exchange Commission and a member of a self-regulatory organization, such as FINRA. *See* 15 U.S.C. §§ 78c(a)(4)(A), (5)(A) and 78o(b); Complaint, Ex. D.

Accordingly, this case is required to be arbitrated under the Code as it involves a dispute arising from the business activities of FINRA members (Berkshire and Freeman Securities) and an associated person (Mr. Seto).

### C. Plaintiffs are Required to Arbitrate the Instant Dispute Pursuant to the Code

Undoubtedly, Plaintiffs will argue they cannot be compelled to arbitrate before FINRA because they are not themselves FINRA members and did not sign any arbitration agreement. While arbitration is a matter of contract, the Second Circuit recognizes that in certain circumstances, it is not only appropriate, but necessary to compel a nonsignatory to arbitrate. Indeed, the Second Circuit "has made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" *Thompson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (quoting *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir. 1980). The Second Circuit has articulated five bases to bind nonsignatories to arbitration agreements: 1) incorporation by reference, 2) assumption, 3) agency, 4) veil-piercing/alter ego, and 5) estoppel. *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (1999). At least two of these bases apply to Plaintiffs: estoppel and agency.

#### 1. Plaintiffs are estopped from avoiding arbitration

"A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Id*. at 353*; Deloitte Noraudit A/S v.*

*Deloitte Haskins & Sells*, *U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993).  The doctrine's purpose is to prevent a nonsignatory from "cherry-picking" the terms that it likes and "ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)."  *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010).

In the instant case, there can be no question that Plaintiffs knowingly and directly benefitted from Freeman Securities and Mr. Seto's status as respectively a FINRA member and associated person.  Federal law requires that persons or entities engaged in the business of effecting transactions in securities for the account of others or engaged in the business of buying and selling securities for their own account, either through a broker or otherwise must be registered with the SEC and a member of a self-regulating organization, such as FINRA.  *See* 15 U.S.C. §§ 78c(a)(4)(A), (5)(A) and 78o(b).  Plaintiffs use Freeman Securities as the entity or instrument through which to conduct transactions and thus receive a direct benefit from that relationship.  Indeed, the Freeman website displays Freeman Securities as the responsible entity for ***all*** of its transactions, be they those involving broker-dealer, asset management, insurance, financial technology (Mr. Seto's speciality), specialty finance and assets, or private equity transactions.  Ozer Decl., Ex. 12.  In fact, the purported transaction that Mr. Seto is accused of trying to divert to Berkshire, which Plaintiffs claim as their own, only involves Freeman Securities and not either of the two named plaintiffs.  Complaint, Ex. D.  The transaction calls for Freeman Securities to advise on matters involving the "sale or exchange of equity securities," which requires FINRA membership.  *See id.*; 15 U.S.C. §§ 78c(a)(4)(A), (5)(A) and 78o(b).

***Moreover, Freeman & Co. actually holds itself out to the public on the Freeman website as a FINRA member,*** even though it is not.  Ozer Decl., Exs. 12 and 13.  On several of the pages of the Freeman website, it reads:

12

© 2016 Freeman & Co. LLC • *Member FINRA* / SIPC

*Id.* (emphasis added). It clearly evidences that Freeman & Co. intended to associate itself with FINRA and its rules and regulations, including the requirement that it arbitrate disputes arising from its business activities.

All of the foregoing is clearly sufficient to estop Plaintiffs from denying they are bound by an agreement to arbitrate before FINRA.

### 2. Plaintiffs must arbitrate under agency principles

A nonsignatory may also be bound by an arbitration agreement under an agency theory. *Am. Bureau of Shipping,* 170 F.3d at 352. An agency relationship is defined as one where there is "consent of one person to allow another to act on his or her behalf." *Fils-Aime v. Rynder TRS, Inc.,* 40 A.D.3d 917, 918 (2d Dep't 2007); *Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.").

Under agency law, Plaintiffs should be bound by the agreements their agent, Freeman Securities, entered into for their benefit. *See Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986) (compelling nonsignatories to arbitrate under contract and agency principles); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("arbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory"). Where, as here, a limited liability company, such as Freeman Securities, is designed to service an affiliate, and the business and employment activities at issue benefit the affiliate, equity demands the arbitration agreements be enforced against the affiliate (in this instance, Plaintiffs). *See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) (compelling arbitration

against parent where claims against parent and subsidiary were "inherently inseparable" and subsidiary was obligated to arbitrate).

In this case, Plaintiffs use Freeman Securities as their agent to transact business. In particular, Plaintiffs used for their benefit, the FINRA member status of Freeman Securities to acquire the securities licensing and registration necessary for Mr. Seto to carry out broker-dealer transactions involving the sale and purchase of securities. Plaintiffs could not engage in these transactions without a FINRA member and the associated persons licensed and registered with FINRA and working for that member entity. Freeman Securities as the FINRA member provides that capability for Plaintiffs. Accordingly, it is only fair and equitable to require Plaintiffs to arbitrate before FINRA.

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AS ALL OF PLAINTIFFS' CLAIMS MUST BE ARBITRATED

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). In resolving the question of jurisdiction, the court can refer to evidence outside of the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that such jurisdiction exists. *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996).

"When an enforceable arbitration agreement covers the claims asserted in a lawsuit, the court lacks subject-matter jurisdiction over the dispute, and the complaint should be dismissed." *Goldberg v. Sovereign Bancorp, Inc.,* 10 Civ. 6263 (DAB), 2011 WL 13261837 (S.D.N.Y. Aug. 19, 2011), *citing to, Sinnett v. Friendly Ice Cream Corp.,* 319 F. Supp. 2d 439, 445 (S.D.N.Y.

2004) (dismissing the complaint upon finding that court lacked subject matter jurisdiction because all claims were subject to resolution through arbitration).

As discussed above, by virtue of the U-4 that Mr. Seto executed after accepting employment with Freeman Securities, a member of FINRA, there exists a valid and enforceable arbitration agreement under the FAA. *See, e.g., Marcus,* 118 F. Supp. 2d at 456; Ozer Decl., Ex. 5. The arbitration provision in Mr. Seto's U-4 covers the claims alleged in Plaintiffs' complaint as those claims arise out of Mr. Seto's employment with Freeman & Co and also involve Berkshire, which is also a FINRA member. Although Plaintiffs are not FINRA members, their use of Freeman Securities through which to conduct business in the highly regulated field of securities broker dealers, makes the arbitration provision of the U-4 that Mr. Seto executed binding upon Plaintiffs based on the theories of estoppel and agency. Accordingly, Plaintiffs' claims are to be arbitrated through FINRA and not litigated before this Court. As such, this Court lacks subject matter jurisdiction over the dispute.

## CONCLUSION

Berkshire respectfully requests this Court grant its instant motion to dismiss the instant action, compel the parties to arbitrate before FINRA, and grant such other relief as the Court determines to be just, necessary, and equitable.

Dated:   New York, New York
         July 9, 2018

_____
Victor C. Bushell (VB 3930)
Cem Ozer (CO 1718)
Bushell, Sovak, Ozer & Kane LLP
274 Madison Ave, Suite 901
New York, New York 10016
212-949-4700
*Attorneys for Defendant*
*Berkshire Capital Securities LLC*

15